# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CLAIRE MITCHELL, KARL AMBROZ,
and BLUE CROSS BLUE SHIELD OF ILL.

        Plaintiffs,

    v.                                                 Case No. 08-C-847

ERIC HESS, SECURA INS. CO., BAY-LAKES
COUNCIL OF BOY SCOUTS OF AMERICA, Inc.,
and LIBERTY MUT. INS. CO.

        Defendants.

## DECISION AND ORDER

      This diversity action is for personal injury arising out of a skiing accident at Granite Peak Ski resort located in Wausau, Wisconsin. Claire Mitchell was seriously injured when eleven-year-old Eric Hess, an inexperienced skier, collided with her on the Midway Miracle ski run at the resort. Eric was a member of Boy Scout Troop 77 at the time and was participating in the Troop's annual ski trip. Ms. Mitchell and Karl Ambroz, M.D., her spouse, both citizens of the State of Illinois, sued Eric; Granite Peak Corporation, which operates the ski hill; Bay-Lakes Council of Boy Scouts of America, Inc.; all three Wisconsin citizens, and their respective insurers. Granite Peak has been dismissed on stipulation of the parties, and the case is before me on Bay-Lakes Council's motion for summary judgment. The motion is opposed by the Plaintiffs and the other defendants. For the reasons set forth below, the motion will be granted.

      Summary Judgment is proper if the pleadings, depositions, answers to interrogatories, and admission on file, together with any affidavits, show that there is no genuine issue of material fact

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, Bay-Lakes Council, has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-324. In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-248.

Plaintiffs' sole claim against Bay Lakes Council is for negligence. Under Wisconsin law, which governs the dispute, *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007), a plaintiff must prove four elements in order to prevail on a negligence claim: (1) a duty owed on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Avery v. Diedrich,* 301 Wis. 2d 693, ¶ 20, 734 N.W.2d 159 (2007) (citing *Nelson v. Davidson,* 155 Wis. 2d 674, 679, 456 N.W.2d 343 (1990)). In support of their claim against the Council, Plaintiffs allege that the Council was responsible for monitoring and supervising Eric Hess's activities during the ski trip, and that the Council was negligent in its failure to reasonably monitor and supervise Eric and to reasonably assess Eric's ability to ski the Midway Miracle run safely. (Comp. ¶¶ 24, 25.) Plaintiffs allege that they sustained damages as a result. (*Id.* ¶ 26.)

A bare assertion that the Council has a duty to supervise Eric is not enough to defeat a motion for summary judgment. The question of whether a legal duty to supervise exists such that a breach of that duty would render the Council liable is one of law. *Lisa's Style Shop, Inc. v. Hagen*

2

*Ins. Agency, Inc.*, 181 Wis. 2d 565, 572, 511 N.W.2d 849, 852 (1994). In order to avoid summary judgment, Plaintiffs must show that evidence exists sufficient to support a finding of fact that would give rise to such liability. Here, I conclude they have failed to do so.

The facts concerning the Council and its relationship to Troop 77 to which Eric belonged are undisputed. The Bay-Lakes Council of the Boy Scouts of America is a Wisconsin non-profit corporation that operates under a charter issued by the Boy Scouts of America ("BSA"). (Def.'s PFOF ¶ 4.) The BSA is a charitable corporation that was created by Congress in 1916. (*Id.* ¶ 1.) Under its federal charter, the BSA promotes scouting throughout the United States by making available for use by other organizations its character building programs. (*Id.* ¶ 2.) The BSA, in turn, charters councils located in communities across the country which then make BSA-developed materials available to community organizations that then operate Cub Scout Packs, Boy Scout Troops, and similar youth groups. (*Id.* ¶¶ 3,6.)

Bay-Lakes Council has its own Board of Directors and Officers, and it raises and allocates its own funds. (*Id.* ¶ 5.) The Council makes BSA training available to troop leaders and operates camping facilities. (*Id.* ¶ 7.) The Council does not choose the leaders or operate any Boy Scout Troops, however. Troops are sponsored by community organizations, such as churches, Parent-Teachers Associations, and schools, and receive their own annual charter from BSA. (Id. ¶ 8.) The local community organization that sponsors the troop appoints a committee comprised of adult volunteers, mostly parents, that is responsible for selecting and supervising troop leaders. (*Id.* ¶ 10.) Troop leaders are responsible for planning, organizing, and supervising the troop's various activities, such as meetings, camping and ski trips. (*Id.* ¶ 11.)

3

Eric Hess belonged to Troop 77, which operates under a charter issued by the BSA to Faith Community Methodist Church located in Greenville, Wisconsin. Brian Patri was the Scoutmaster for Troop 77 at the time of the trip at issue. Troop 77 usually planned one ski trip each year. The scouts themselves planned the specifics of their annual ski trip, selecting the area and the date. Adult volunteers provided the transportation and chaperoned the scouts on the trip. (*Id.* ¶¶ 12-17). No employee of the Bay-Lakes Council accompanied the Troop or assisted on the trip or was present at the resort.

Based upon the foregoing facts, it is clear that under the Restatement of the Law of Torts, the Council had no duty to supervise Eric Hess on his ski trip at the Granite Peak ski resort. As a general rule, a party is not liable for the negligent conduct of another, absent a special relationship. A duty to supervise the actions of a third party so as to prevent injury to another arises in limited circumstances. Under the Restatement of the Law of Torts, "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

> (b) a special relation exists between the actor and the other which gives to the other a right to protection."

*Restatement Second of Torts* § 315 (1965). Here, there was no relationship between the Council and Ms. Mitchell that could have given rise to a duty on the part of the Council to protect her. It thus follows that if the Council had any duty to supervise Eric, it must be on account of a special relation the Council had with him. But no such relationship existed between the Council and Eric either. The Restatement recognizes a duty to supervise where there exists a special relation of parent and child, employer and employee, owner and borrower of certain types of property, or

4

custodian and prisoner. *See Restatement*, *supra*, §§ 316-320. The relationship between the Council and Eric resembles none of these. The Council had no authority over Eric either as a parent or an employer; nor did it loan him any property or have legal custody over him. Absent such a relation, the Restatement recognizes no duty to supervise another.

Wisconsin does not follow the Restatement's concept of duty, however. Wisconsin follows the minority view that "[e]veryone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Alvarado v. Sersch*, 2003 WI 55, ¶ 13, 262 Wis. 2d 74, 662 N.W.2d 350 (quoting *Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928) (Andrews, J., dissenting)). Thus, in a negligence case in Wisconsin, "a defendant's conduct 'is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.'" *Nichols v. Progressive Northern Insurance Co.*, 2008 WI 20, ¶¶ 45, 308 Wis. 2d 17, 746 N.W.2d 220 (quoting *Gritzner v. Michael R.*, 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906). In other words, under Wisconsin law the element of duty is always present and the analysis focuses on the issue of whether the duty was breached. To establish a breach of a duty of care, the harm that occurs must have first been foreseeable. When the risk of harm is not foreseeable, no breach of the duty of ordinary care can be shown. *See Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 16, 318 Wis. 2d 622, 768 N.W.2d 568 ("In a case where there is no genuine issue of material fact as to the breach and where there is a lack of foreseeable risk, it can be said as a matter of law that, based on the facts presented, there is no breach because no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care.") (internal quotes omitted). If, on the other hand, the risk is arguably

5

foreseeable, the question then becomes whether the defendant's act or omission "satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances." *Nichols*, 308 Wis. 2d 17, ¶ 45, 746 N.W.2d 220. In Wisconsin the elements of duty and breach are usually presented to the trier of fact in a question asking whether the defendant was negligent, and then the elements of causation and damages are addressed. *Id.*, 308 Wis. 2d 17, ¶ 12, 746 N.W.2d 220 (citing Wis. JI-Civil 1005 (2006)). In rare cases, however, the question of whether the duty was breached can be decided as a matter of law. *Behrendt*, 318 Wis. 2d 622, ¶ 22, 768 N.W.2d 568.

Applying these principles here, Plaintiffs and the non-moving defendants argue that the evidence is sufficient to raise a jury question as to whether the Council breached its duty of care by failing to take additional steps to avoid harm to Ms. Mitchell. They claim that the Council approved the ski trip by issuing a Local Tour Permit. Troops are required to obtain a Local Tour Permit from the Council whenever they travel up to 500 miles outside the community for activities.[1] In general, the Local Tour Permit is used to document the fact that the drivers have adequate insurance and the vehicles they use have an adequate number of seat belts. (*Id.* ¶ 21.) A form that describes the tour permit sets forth its purpose:

> The local tour permit was designed to ensure unit leadership understands proper B.S.A. safety standards as it relates to travel, aquatics activities and parental permission for Scouts to participate in an activity. It is also a protection mechanism for unit leaders, parents who serve as drivers to and from an activity, as well as Bay-Lakes Council and the Boy Scouts of America."

---

[1]Trips more than 500 miles away require a more detailed permit. (Aff. of Marie A. Stanton Aff., Ex. A, Ans. to Interog. No 10.)

6

(Stanton Aff. ¶ 2, Ex. A (attachment).)  The Council is able enforce the requirement that Troop 77

obtain Local Tour Permits because it has the power to revoke the charter issued to Faith Community

Methodist Church.  (Pl.'s PFOF ¶ 24.)

Plaintiffs and the non-moving defendants argue that the fact that Troop 77 was required to

obtain a Tour Permit gave the Council ultimate authority and control over the entire trip.  Moreover,

they argue that downhill skiing is "an inherently risky and dangerous activity."  (Br. of Non-Moving

Defs. at 9.)  The BSA *Guide to Safe Scouting for Unit Activities* ("the Guide"), which is intended

for troop leaders, notes that each activity has a minimum skill level and states that "the supervisor

must identify and recognize this level and be sure that participants are not put at risk by attempting

any activity beyond their level."  (Aff. of Ryan M. Froelich, Ex. C at 37.)  Under the heading

"Winter Sports Safety," the *Guide* calls for direct supervision "by two or more adults at all times

when Scouts are 'in the field.'" (*Id.* at 56.)  Another guideline notes the importance of making sure

that all participants "know, understand, and respect the rules and procedures for safe winter

activity." (*Id.* at 57.) Plaintiffs and the non-moving defendants contend that despite his certification

that he had a copy of the BSA *Guide* and had read it (Froelich Aff., Ex. D), Troop Leader Patri

failed to follow the guidelines to insure that the activity was safely conducted.  On these facts, they

contend that a jury could reasonably conclude that it was foreseeable that an inexperienced skier

such as Eric could cause harm to another and that the Council failed to take reasonable steps to

insure that the members of Troop 77 "were qualified to engage in an inherently dangerous activity

and that they would be supervised and monitored by qualified adults."  (Pls. Br. In Opp. at 13.)

I disagree and instead conclude that this is one of those rare cases where it is apparent as a

matter of law that the Council did not breach its duty of due care to the Plaintiffs.  Based on the

7

undisputed facts, I conclude that it was not reasonably foreseeable that by issuing Troop 77's Local Tour Permit the Council was creating a risk of harm to others. This is not to say that the possibility of harm to others is not possible any time people, especially children, take to a ski hill. But the Council recognized as much and sought to insure the safety of both the scouts and others by making available to troop leaders training and materials that informed them of the risks. By requiring troops to obtain Local Tour Permits, the Council further reinforced its safety training by insisting that specific safety measures were followed when the activity involved swimming or boating. For activities in general, the Permits required the vehicles in which the scouts would be traveling to have the required number of seat belts and appropriate insurance coverage, and that the leader certify he had a copy of and had read the *Guide*. Having insisted on such a certification from the adult Troop leader, it was reasonable for the Council to assume proper supervision of the ski trip would be provided.

Of course, it is always possible that adults who are charged with the supervision of children will fail to properly carry out their duties. The Council could have insisted on additional safety measures to guard against such a possibility. The BSA and its councils could decide to operate differently. The councils could increase the number of their employees and the amount they charge in fees in order to investigate Troop leaders to determine which ones may not carry out their responsibilities, or perhaps even provide their own trained supervisors for every outing. Such steps, however, would be outside of the ordinary standard of care required. Charitable organizations, such as the Boy Scouts, need not operate under the assumption that volunteer leaders and adult chaperones will fail to fulfill their supervisory responsibilities. I therefore conclude on the undisputed facts before me that the Council did not breach its duty of due care.

8

Alternatively, I conclude that liability is precluded on the basis of public policy. "Even if a plaintiff adequately establishes all four elements of a common-law negligence claim, Wisconsin courts have 'reserved the right to deny the existence of a negligence claim based on public policy reasons . . . .'" *Nichols*, 308 Wis. 2d 17, ¶ 12, 746 N.W.2d 220 (quoting *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 24, 291 Wis. 2d 283, 717 N.W.2d 17). The Wisconsin Supreme Court has identified six public policy considerations that Wisconsin courts use to limit liability in negligence claims:

> (1) the injury is too remote from the negligence; (2) the recovery is wholly out of proportion to the culpability of the negligent tort-feasor; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery would place too unreasonable a burden on the negligent tort-feasor; (5) recovery would be too likely to open the way to fraudulent claims; and (6) recovery would enter into a field that has no sensible or just stopping point.

*Behrendt*, 318 Wis. 2d 622, ¶ 29, 768 N.W.2d 568 (quoting *Colla v. Mandella*, 1 Wis. 2d 594, 599, 85 N.W.2d 345 (1957)) (internal quotes omitted). Any one of these six factors, if applicable, could preclude liability. *Id.*

While several of these factors may apply, I am satisfied that the strongest reason to preclude liability under the circumstances of this case on public policy grounds is because allowing "recovery would enter a field that has no sensible or just stopping point." If the mere possibility that a person having a duty to supervise another may fail to properly do so is enough to give rise to a duty on the part of another person or organization to institute measures to perform that duty, then it seems there would be no sensible stopping point to such liability. It is also worth noting that imposing liability under the circumstances of this case would discourage organizations like the BSA from seeking to impose safety standards on local organizations they charter. If, by requiring Local Tour Permits in

9

an attempt to ensure that the adults in charge of an outing understand general safety standards, they render themselves liable for accidents that occur when such standards are not followed, organizations such as the BSA and its councils may very well abandon such efforts. Imposing liability upon the Council under these circumstances would at least create an incentive for them to do so. As a matter of public policy, if for no other reason, I therefore conclude that Wisconsin courts would preclude liability under these circumstances. *See, e.g., Nichols*, 308 Wis. 2d 17 (holding claim for common-law negligence against social hosts who were aware that minors on their property were consuming alcohol, but who did not provide the alcohol, for injuries sustained when an underage guest later caused an alcohol-related car accident barred on public policy grounds).

Finally, I note that similar claims against the BSA and its Councils have been rejected by most other courts that have confronted them. *See, e.g., Glover v. Boy Scouts of America, et. al.,* 923 P.2d 1383 (1996), *Wilson v. United States,* 989 F.2d 953, 958-59 (8th Cir.1993); *Anderson v. Boy Scouts of Am.*, 226 Ill. App. 3d 440, 168 Ill. Dec. 492, 494-95, 589 N.E.2d 892, 894-95 (1992); *McGarr v. Baltimore Area Council*, 74 Md. App. 127, 536 A.2d 728, 735 (1988); *Wilson v. St. Louis Area Council*, 845 S.W.2d 568, 571-72 (Mo. Ct. App. 1992); *Davis v. Shelton*, 33 A.D.2d 707, 304 N.Y.S.2d 722, 724-25 (1969); *Pitkewicz v. Boy Scouts of Am.*, 261 A.D.2d 462, 690 N.Y.S.2d 119 (1999); *Souza v. Narragansett Council*, 488 A.2d 713, 715 (R.I.1985); *Mauch v. Kissling,* 56 Wash. App. 312, 783 P.2d 601, 605 (1989); *see also Young v. Boy Scouts of Am. et. al.*, 9 Cal. App.2d 760, 51 P.2d 191, 193-94 (Dist. Ct.1935) (dicta). In general, these courts have concluded that the BSA, the Council, and the community organizations that own and operate the individual troops are distinct corporate entities and that Councils do not have a duty to monitor or

10

supervise individual Scouts or their leaders. *Glover* is typical in the analysis of the issue by other courts:

> [S]couting programs are provided through local community sponsors which apply for an annual renewable charter from the BSA through their local council. The BSA issues such charters to schools, churches, or other civic organizations. The charters authorize these community sponsors to run a local unit of Cub Scouts, Boy Scouts, or Explorers. The troop committee, scoutmaster, and other unit leaders are selected by the community sponsor, not by the BSA or local councils, and the community sponsor owns and operates the local unit. The BSA does not administer the "scouting program" but merely offers the program to local community sponsors that wish to use scouting to achieve their own goals and objectives with local youth. In addition, neither the BSA nor the local councils create, administer, or run individual scouting troops.

923 P.2d at 1387-88.

In only one reported case cited by the parties has a motion for summary judgment by a council sued on account of conduct of a scoutmaster been denied. In *Golden Spread Council v. Akins,* 926 S.W.2d 287 (Tex. 1996), a Scout sued the BSA and the Golden Spread Council after he was molested by his Scoutmaster. The Texas Supreme Court held that summary judgment was appropriate as to the claim against the BSA because the BSA had no duty to protect the Scout, but allowed the claim against the Golden Spread Council to proceed. The Court noted that a Council employee was aware of the Scoutmaster's history as a reported child molester, yet took the affirmative step of recommending him as a potential Scoutmaster. *Id.* at 292. While the Court held that the Council had no duty to investigate the reported child molester on its own or to divulge to the church sponsor of Troop 223 or others the information it had received, it did have a duty to exercise reasonable care in recommending a scoutmaster based on the information it received. *Id.* at 292. Because the recommendation may have increased the risk to the scouts, the Court concluded that the council was not entitled to summary judgment.

11

*Golden Spread* is clearly distinguishable from the facts of this case. Here, there is no suggestion that the Council knew or should have known that the Troop leader would not properly supervise the Scouts. The Council made no recommendations, and merely issued the Local Tour Permit in accordance with its policies and procedures. That is insufficient as a matter of law to support a finding that the Council was negligent. Alternatively, liability is precluded as a matter of public policy.

Accordingly, the Council's motion for summary judgment is GRANTED, and Bay-Lakes Council is dismissed from this action. The clerk shall set this matter on the court's calendar for further a telephone status conference.

**SO ORDERED** this ___23rd___ day of March, 2010.

_s/ William C. Griesbach_____
William C. Griesbach
United States District Judge

Case 1:08-cv-00847-WCG   Filed 03/23/10   Page 12 of 12   Document 58